IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION


PHILLIP BUMPUS                              )
                                            )
v.                                          )        No. 3:12-0541
                                            )        Magistrate Judge Holmes
NANCY A. BERRYHILL[1]                       )
        Acting Commissioner of Social Security   )


# M E M O R A N D U M

Plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain

judicial review of the final decision of the Social Security Administration ("SSA") partially

denying Plaintiff's claim for a period of disability, Disability Insurance Benefits ("DIB"), and

Supplemental Security Income ("SSI"), as provided under Title II and XVI of the Social Security

Act ("the Act").[2] The case is currently pending on Plaintiff's motion for judgment on the

administrative record (Docket Entry No. 12), to which Defendant has responded (Docket Entry

No. 13). Plaintiff has also filed a subsequent reply to Defendant's response (Docket Entry

No. 14-1). This action is before the undersigned for all further proceedings pursuant to the

consent of the parties and the District Judge in accordance with 28 U.S.C. § 636 (c) (Docket

Entry No. 22).

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant
to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for former Acting
Commissioner Carolyn W. Colvin as the defendant in this suit.

[2] The denial was "partial" in light of the ALJ's indication that another office within the Social Security
Administration would determine whether Plaintiff met the non-disability requirements for SSI payments,
based on the ALJ's determination that Plaintiff was disabled as of May 1, 2008. *See* Transcript of the
Administrative Record (Docket Entry No. 10), at 8, 21-22.

1

Upon review of the administrative record as a whole and consideration of the parties' filings, Plaintiff's motion is **GRANTED**. For the reasons stated herein, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this case for further administrative proceedings.

# I. INTRODUCTION

Plaintiff filed an application for a period of disability, DIB, and SSI on September 12, 2008. *See* Transcript of the Administrative Record (Docket Entry No. 10), at 72-77.[1] He alleged a disability onset date of November 1, 2002, which was later amended to June 4, 2004. AR 12, 72-77, 138. Plaintiff asserted that he was unable to work because of neck and back pain, past surgeries, medication side effects, and depression. AR 73, 75, 138.

Plaintiff's applications were denied initially and upon reconsideration. AR 72-77. Pursuant to his request for a hearing before an administrative law judge ("ALJ"), Plaintiff appeared with his counsel and testified at a hearing before ALJ Brian Dougherty on July 21, 2010. AR 27. On August 16, 2010, the ALJ entered a partially favorable decision. AR 8-10. The ALJ determined that Plaintiff was not disabled prior to May 1, 2008, but was disabled from May 1, 2008 through the date of the ALJ decision. AR 12-22. On April 20, 2012, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (AR 1-3), thereby making the ALJ's decision the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g).

---

[1] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "AR" followed by the corresponding page number(s) as numbered in large black print on the bottom right corner of each page. All other filings are hereinafter referenced by the abbreviation "DE" followed by the corresponding docket entry number and page number(s) where appropriate.

# II. THE ALJ FINDINGS

The ALJ issued a partially favorable decision on August 16, 2010. AR 8-10. Based upon the record, the ALJ made the following enumerated findings:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2006.

2. The claimant has not engaged in substantial gainful activity since the amended alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

***

3. Since the amended alleged onset date of disability, June 4, 2004, the claimant has had the following severe impairments: cervical spondylosis and lumbar degenerative disc disease, status post two lumbar spine surgeries. Beginning on the established onset date of disability, May 1, 2008, the claimant has had the following severe impairments: cervical spondylosis and lumbar degenerative disc disease, status post two lumbar spine surgeries, along with bilateral shoulder impingement syndrome (20 CFR 404.1520(c) and 416.920(c)).

***

4. Since the amended alleged onset date of disability, June 4, 2004, the claimant has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

***

5. After careful consideration of the entire record, the undersigned finds that prior to May 1, 2008, the date the claimant became disabled, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that he could sit for six hours in an eight-hour workday, and he could stand or walk for six hours in an eight-hour workday with the use of a cane.

***

6. After careful consideration of the entire record, the undersigned finds that beginning on May 1, 2008, the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he is now subject to the additional limitations expressed in the February 17, 2009 opinion of treating physician Thomas O'Brien, M.D., found at exhibit 10F. He can lift up to ten pounds occasionally. He can sit, stand, or walk for up to two hours each, both at one time and cumulatively over the course of an eight-hour

workday. He is restricted to occasional use of the right hand for reaching, handling, fingering, feeling, pushing, or pulling activities. He can only occasionally use either foot for the operation of foot controls. He can only occasionally perform all postural activities. He can have no more than occasional exposure to unprotected heights or moving machinery, and he can no more than occasionally operate a motor vehicle.

\*\*\*

7. Since June 4, 2004, the claimant has been unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

\*\*\*

8. Prior to the established disability onset date, the claimant was a younger individual age 18-44. The claimant's age category has not changed since the established disability onset date (20 CFR 404.1563 and 416.963).

9. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

10. Prior to May 1, 2008, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills. Beginning on May 1, 2008, the claimant has not been able to transfer job skills to other occupations (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

\*\*\*

11. Prior to May 1, 2008, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

\*\*\*

12. Beginning on May 1, 2008, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 414.1560(c), 404.1566, 416.960(c), and 416.966).

\*\*\*

13. The claimant was not disabled prior to May 1, 2008, but became disabled on that date and has continued to be disabled through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

AR 14-22.

# III. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

# IV. DISCUSSION AND CONCLUSIONS OF LAW

## A. Standard of Review

The determination of disability under the Act is an administrative decision. The only questions before this Court upon judicial review are: (i) whether the decision of the Commissioner is supported by substantial evidence, and (ii) whether the Commissioner made legal errors in the process of reaching the decision. 42 U.S.C. § 405(g). *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (adopting and defining substantial evidence standard in context of Social Security cases); *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010). The Commissioner's decision must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.,* 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 477 (6th Cir. 2003); *Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 389-90 (6th Cir. 1999).

Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)); *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007); LeMaster v. *Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976) (quoting Sixth Circuit opinions adopting language substantially similar to that in *Richardson*).

The Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *See, e.g., Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and determination unless the record as a whole is without substantial evidence to support the ALJ's determination. 42 U.S.C. § 405(g). *See, e.g., Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

**B. Determining Disability at the Administrative Level**

The claimant has the ultimate burden of establishing an entitlement to benefits by proving his "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). The asserted impairment(s) must be demonstrated by medically acceptable clinical and laboratory diagnostic techniques. *See* 42 U.S.C. §§ 432(d)(3) and 1382c(a)(3)(D); 20 C.F.R. §§ 404.1512(a), (c), and 404.1513(d). "Substantial gainful activity"

not only includes previous work performed by claimant, but also, considering claimant's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which claimant lives, or whether a specific job vacancy exists, or whether claimant would be hired if he applied. 42 U.S.C. § 423(d)(2)(A).

In the proceedings before the Social Security Administration, the Commissioner must employ a five-step, sequential evaluation process in considering the issue of the claimant's alleged disability. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must show that he is not engaged in "substantial gainful activity" at the time disability benefits are sought. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007); 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must show that he suffers from a severe impairment that meets the twelve month durational requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *See also Edwards v. Comm'r of Soc. Sec.*, 113 F. App'x 83, 85 (6th Cir. 2004). Third, if the claimant has satisfied the first two steps, the claimant is presumed disabled without further inquiry, regardless of age, education or work experience, if the impairment at issue either appears on the regulatory list of impairments that are sufficiently severe as to prevent any gainful employment or equals a listed impairment. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant is not required to show the existence of a listed impairment in order to be found disabled, but such showing results in an automatic finding of disability that ends the inquiry. *See Combs, supra*; *Blankenship v. Bowen*, 874 F.2d 1116, 1122 (6th Cir. 1989).

If the claimant's impairment does not render him presumptively disabled, the fourth step evaluates the claimant's residual functional capacity in relationship to his past relevant work. *Combs, supra.* "Residual functional capacity" ("RFC") is defined as "the most [the claimant] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a)(1). In determining a claimant's RFC, for purposes of the analysis required at steps four and five, the ALJ is required to consider the combined effect of all the claimant's impairments, mental and physical, extertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. §§ 423(d)(2)(B), (5)(B); *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir. 1988). At the fourth step, the claimant has the burden of proving an inability to perform past relevant work or proving that a particular past job should not be considered relevant. *Cruse,* 502 F.3d at 539; *Jones*, 336 F.3d at 474. If the claimant cannot satisfy the burden at the fourth step, disability benefits must be denied because the claimant is not disabled. *Combs, supra.*

If a claimant is not presumed disabled but shows that past relevant work cannot be performed, the burden of production shifts at step five to the Commissioner to show that the claimant, in light of the claimant's RFC, age, education, and work experience, can perform other substantial gainful employment and that such employment exists in significant numbers in the national economy. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (quoting *Walters v. Comm'r of Soc. Sec.*, 402 F.3d 525, 529 (6th Cir. 1997)). *See also Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). To rebut a *prima facie* case, the Commissioner must come forward with proof of the existence of other jobs a claimant can perform. *Longworth*, 402 F.3d at 595. *See also Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 528 (6th Cir. 1981), *cert. denied*, 461 U.S. 957, 103 S. Ct. 2428. 77 L. Ed. 2d 1315 (1983) (upholding the validity of

the medical-vocational guidelines grid as a means for the Commissioner of carrying his burden under appropriate circumstances). Even if the claimant's impairments prevent the claimant from doing past relevant work, if other work exists in significant numbers in the national economy that the claimant can perform, the claimant is not disabled. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). *See also Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028-29 (6th Cir. 1990); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88-89 (6th Cir. 1985); *Mowery v. Heckler*, 771 F.2d 966, 969-70 (6th Cir. 1985).

If the question of disability can be resolved at any point in the sequential evaluation process, the claim is not reviewed further. 20 C.F.R. § 404.1520(a)(4). *See also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (holding that resolution of a claim at step two of the evaluative process is appropriate in some circumstances).

### C. The ALJ's Five -Step Evaluation of Plaintiff

In the instant case, the ALJ resolved the Plaintiff's claim at step five of the five-step process. The ALJ found that Plaintiff met the first two steps, but found at step three that Plaintiff was not presumptively disabled because he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. At step five, the ALJ issued an RFC that covered the period before May 1, 2008, the date on which the ALJ determined that Plaintiff became disabled, and a separate RFC covering Plaintiff's limitations after May 1, 2008. The ALJ determined that prior to May 1, 2008, Plaintiff's RFC allowed him to perform sedentary work, except that he could sit for six hours in an eight-hour workday, and could stand or walk for six hours in an eight-hour

workday with the use of a cane ("the pre-May 1, 2008 RFC"). The ALJ further determined that beginning on May 1, 2008, Plaintiff's RFC allowed him to perform sedentary work subject to additional limitations expressed by Dr. Thomas O'Brien, which included: occasionally lifting ten pounds; sitting, standing, and walking for up to two hours each; occasional use of either foot for the operation of foot controls; occasional performance of all postural activities; occasional exposure to unprotected heights or moving machinery; and occasional operation of a motor vehicle ("the post-May 1, 2008 RFC"). Further, the ALJ found that, prior to May 1, 2008, considering Plaintiff's age, education, prior unskilled work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could have performed, but that beginning on May 1, 2008, there were no jobs that existed in significant numbers in the national economy that he could perform. AR 14-22.

**D. Plaintiff's Assertions of Error**

Plaintiff argues that the ALJ erred by: (1) failing to properly evaluate the medical opinions of record and by not resolving the inconsistencies between the record and the RFC finding; (2) not including a function-by-function assessment in the RFC assessment as required by SSR 96-8p; (3) failing to re-contact Dr. O'Brien or another medical expert to testify regarding the onset date of the Plaintiff's disability; and (4) improperly evaluating the credibility of Plaintiff's statements as required by SSR 96-7p. DE 12-1 at 1-2. Plaintiff therefore requests that the Commissioner's decision be reversed and benefits awarded, or, alternatively, that this case be remanded for further consideration by a different ALJ. *Id.* at 19.

Sentence four of 42 U.S.C. § 405(g) states the following:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. § 405(g), 1383(c)(3). "In cases where there is an adequate record, the [Commissioner's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a claimant's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994). The Court addresses each of Plaintiff's assertions of error below.

**1. Whether the ALJ improperly evaluated the medical opinions of record.**

Plaintiff contends that the ALJ failed to properly evaluate the medical opinions of record and failed to resolve the inconsistencies between such opinions and the pre-May 1, 2008 RFC assessment. DE 12-1 at 9-12. Plaintiff specifically alleges inconsistencies between the pre-May 1, 2008 RFC and the medical source statement provided by his treating physician, Dr. O'Brien. *Id*. at 9-10. Plaintiff argues that while the ALJ gave significant weight to Dr. O'Brien's opinion for purposes of the post-May 1, 2008 RFC, the ALJ failed to properly give weight to this opinion for the pre-May 1, 2008 RFC. *Id*. at 10-12.

Although not discussed by Plaintiff, the Court notes that Dr. O'Brien issued two separate medical source statements that contained opinions as to Plaintiff's functional limitations, one on February 17, 2009 and one on May 24, 2010. AR 367, 376. The opinions are largely similar,

although the latter opinion is more restrictive in several ways: Plaintiff requires the use of a cane to ambulate, is unable to ever climb ladders or scaffolds, balance, crouch, or crawl, cannot be exposed to unprotected heights, cannot "walk a block … on rough or uneven surfaces" or "climb a few steps" at a reasonable pace, and "may require laying down" for 30 minutes once or twice per day. AR 371-76. The February 17, 2009 medical source statement, which was accorded controlling weight and incorporated into the *post*-May 1, 2008 RFC, opined that Plaintiff can sit, stand, or walk for up to two hours each, both at one time and cumulatively over the course of an eight-hour workday. AR 19, 363.

The ALJ's pre-May 1, 2008 RFC limited Plaintiff to sedentary work with additional restrictions limiting Plaintiff to sitting for six hours in an eight-hour workday, and standing or walking for six hours in an eight-hour workday with the use of a cane. AR 15. The ALJ stated the following with respect to his pre-May 1, 2008 RFC assessment:

> The claimant did not apply for benefits until September 2008, shortly after his neck surgery. Considering the evidence as a whole, it is reasonable to conclude that the claimant's sit/stand limitations did not arise until around the time [] that he decided to proceed with that surgery in 2008. The chronology of events as outlined in the record support this conclusion. Particularly, Dr. O'Brien's treatment notes provide a good documentation of this progression. Dr. O'Brien's notes indicate that the [claimant] was having increased neck pain and back pain when shifting from sitting to standing in 2007 and 2008, but that he was still able to work as a barber … As of the May 14, 2008 visit, this pain progressed to the point that he has been unable to work in the barbershop … Accordingly, based on the record as a whole, I conclude that a reasonable finding on the onset date is May 1, 2008.

AR 18-19. The ALJ also noted that "[n]o medical opinions concerning the claimant's residual functional capacity were rendered during [the period prior to May 1, 2008]," and that the February 17, 2009 medical source statement was "not consistent with the claimant's work activity reported in Dr. O'Brien's treatment notes during this period [prior to May 1, 2008]." *Id.* at 19.

Plaintiff fails to identify any specific inconsistencies between Dr. O'Brien's opinion and the RFC in his brief, instead claiming that Dr. O'Brien's opinion should have been applied to the pre-May 1, 2008 RFC based on his continual treatment of Plaintiff since September of 2006. DE 12-1 at 10. Notwithstanding the paucity of this argument, the Court agrees that this case should be remanded for further consideration of Plaintiff's RFC.

In support of the pre-May 1, 2008 RFC, the ALJ stated that Dr. O'Brien's notes did not "suggest particularly limiting conditions" and that there was "no mention in any of Dr. O'Brien's treatment notes about any sit/stand problems." AR 18. However, this reasoning is directly contradicted by the evidence of record. In September of 2006, Dr. O'Brien noted lower back pain that radiated into the right buttock and proximal thigh that was "brought on by standing." AR 304. During the same visit, Dr. O'Brien noted that Plaintiff's neck pain was caused by "static positioning such as working as a barber." AR 304. This is consistent with a subsequent MRI of Plaintiff's cervical spine, performed on September 20, 2006, that revealed central stenosis and a central and bilateral paracentral posterior disk bulge. AR 308. Significantly, Dr. O'Brien also stated during the September 14, 2006 visit that Plaintiff was "having an increasingly difficult time performing his job requirements." AR 304.

In December of 2006, Dr. O'Brien noted that the aforementioned MRI demonstrated cervical degenerative disc disease with severe narrowing of the canal, and opined that the severity of Plaintiff's cervical stenosis made him a candidate for surgical intervention. AR 302. Dr. O'Brien diagnosed Plaintiff with cervical spondylosis with cervical radiculopathy, as well as lumbar degenerative disc disease with lumbar radiculopathy. AR 302. Dr. O'Brien additionally noted that Plaintiff's chronic back pain was "brought on by activities such as prolonged standing." AR 302.

During a subsequent visit in April of 2007, Plaintiff elected to proceed with surgery due to the severity of his cervical pain. AR 300. Upon examination, Plaintiff complained of severe lower back pain "that limits his ability to sit and stand." AR 300. He complained of "intractable pain," which included pain when "maintaining prolonged sitting and standing position[s]." AR 300. Dr. O'Brien identified "painful trigger points" in the lumbar area, and noted that Plaintiff had a limited range of motion. AR 300. Dr. O'Brien also discussed operating on Plaintiff's lumbar spine during this visit, but elected to first proceed with the cervical procedure based on the quicker recovery time associated with that procedure. AR 301. He also prescribed a lumbar orthosis (back brace) for Plaintiff to wear whenever he was in an upright position, which would include sitting and standing. AR 301.

In August of 2007, Dr. O'Brien again noted that Plaintiff was experiencing severe lower back, degenerative disc disease at the L5-S1 level with severe loss of disc height, right perineural scarring, and lumbar radiculopathy. AR 297. He also noted that Plaintiff had pain "going from a sitting to standing position." AR 297. As such, the Court finds ample evidence in Dr. O'Brien's notes indicating that Plaintiff was experiencing pain that limited his ability to sit and stand. Although an ALJ "need not discuss every piece of evidence in the record" he also "may not ignore an entire line of evidence that is contrary to the ruling." *Craig v. Colvin*, No. 3:12-cv-0333, 2014 WL 1287178, at *12 (M.D. Tenn. Mar. 28, 2014) (citing *McCombs v. Barnhart*, 106 F. App'x 480, 484 (7th Cir. 2004)). *See also Rogers v. Sec'y of Health & Human Servs.*, 786 F.2d 1166 (6th Cir. 1986) ("A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.") (internal citation omitted).

The ALJ's opinion is further complicated by its failure to explain the weight given to the non-treating sources. Dr. Carol Varnado performed a consultative examination of Plaintiff on November 21, 2008, which the ALJ used to support his determination that Dr. O'Brien's medical source statement did not apply to the June 4, 2004 onset date alleged by Plaintiff:

> Considering the clinical findings with the chronology of his treatment and the evidence that he continued to work as a barber through 2008, it is reasonable to conclude that Dr. O'Brien's RFC of February 2009 was not applicable as of the alleged onset date. Crediting Dr. Varnado's consultative examination, the claimant's limitations were not disabling in November 2008. It should be noted that Dr. Varnado did not address any sit/stand limitations.

AR 18. This explanation is misleading, however, as it suggests that Dr. Varnado found that Plaintiff was not disabled in November of 2008. In reality, it is unclear whether Dr. Varnado even examined Plaintiff. The examination note indicates that Plaintiff was examined by Alma Barnes, a person whose profession is not identified. AR 282. The note also states the following with respect to the scope of the examination:

> We were asked only to provide the patient's height, weight and blood pressure and the patient's best corrected visual acuity by Titmus or Snellen's examination, the gait, station and the range of motion of the Cervical and Dorsolumbar Spines.

AR 282. As such, by the examiner's own admission, a very limited examination of Plaintiff took place in November of 2008, which the ALJ failed to acknowledge. More significantly, the ALJ's statement that Dr. Varnado found that Plaintiff's limitations were not disabling is simply unfounded. In fact, Dr. Varnado specifically declined to provide a medical assessment on the issue: "Because of the brevity and scope of this evaluation, I am unable to make a determination about the patient's ability to perform the stated medical assessment tasks." AR 284. The ALJ thus credited Dr. Varnado's opinion with an unspecified amount of weight despite Dr. Varnado's explicit statement that she could not provide a medical opinion as to any limitations.

Furthermore, the ALJ stated that Dr. Varnado "concluded that the claimant had the [RFC] to occasionally lift 10 pounds, and perform standing and walking with the aid of a cane." AR 17. Again, the ALJ misrepresents the report. The examiner instead noted that Plaintiff "lifted ten pounds with each hand, on a one time basis." AR 283. The examiner also stated that Plaintiff's mobility was "decreased," and that his gait was "[u]nsteady, broad-based and with a cane and a limp favoring his right lower extremity." AR 283. The Court reiterates that Dr. Varnado expressly declined to provide a medical opinion as to *any* limitations due to the limited scope of the examination, including those involving Plaintiff's ability to lift, stand, and walk. AR 284.

Plaintiff additionally claims that the ALJ violated SSR 96-8p by failing to assign or make clear the weight given to Dr. Anita Johnson's opinion. DE 12-1 at 11. Contrary to Plaintiff's argument, however, SSR 96-8p does not require the ALJ to assign specific weight to the opinion of a non-treating State agency physician. SSR 96-8p requires the ALJ to give controlling weight to the opinion of a treating physician if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record," 1996 WL 374184, at *7.

However, SSR 96-6p does require the ALJ to explain the weight given to the opinions of State agency physicians, 1996 WL 374180, at *2, which the ALJ failed to do. This is significant because, notwithstanding Plaintiff's erroneous argument that the ALJ did not rely on a medical opinion in formulating the RFC (DE 12-1 at 10), the ALJ clearly utilized Dr. Johnson's opinion in determining the RFC, which concluded that Plaintiff could sit for six hours and stand or walk for six hours in an eight-hour workday. AR 15, 352. Nevertheless, it appears that the ALJ only partially incorporated Dr. Johnson's opinion into the pre-May 1, 2008 RFC. The ALJ failed to discuss Dr. Johnson's additional restrictions with respect to lifting, carrying, pushing, and

pulling. AR 352. Nor did the ALJ explain why the RFC did not include any of the postural limitations in Dr. Johnson's opinion. AR 353. An ALJ's failure to explain why he did not adopt the limitations of a medical source whose opinion he accorded significant weight constitutes reversible error. *Moore v. Colvin*, No. 2:14-cv-455, 2015 WL 5675805, at *7 (S.D. Ohio Sept. 28, 2015). *See also Ledford v. Colvin*, No. 15-217, 2016 WL 4045427, at *5 (E.D. Ky. June 21, 2016), *report and recommendation adopted*, No. 2015-217, 2016 WL 4046993 (E.D. Ky. July 27, 2016) ("[T]he ALJ must meaningfully explain why certain limitations are not included in the RFC determination-especially when such limitations are set forth in opinions the ALJ weighs favorably."). *See also Marshall v. Comm'r of Soc. Sec.*, No. 3:14-cv-465, 2015 WL 7273113, at *6 (S.D. Ohio Nov. 17, 2015), *report and recommendation adopted*, 2015 WL 8682785, at *1 (S.D. Ohio Dec. 11, 2015) (remanding where ALJ gave opinions significant weight, but failed to explain why certain limitations were not included in the RFC finding).

The Court acknowledges that a finding that Plaintiff was somehow deprived of a substantial procedural right solely by the ALJ's failure to identify the weight given to a non-examining State physician would "aggravate[] controlling Sixth Circuit precedent." *Johnson v. Astrue*, No. 1:09-cv-2959, 2010 WL 5559542, at *6 (N.D. Ohio Dec. 3, 2010), *report and recommendation adopted,* No. 1:09-cv-2959, 2010 WL 5478604 (N.D. Ohio Dec. 30, 2010). However, when the ALJ's failure to articulate his reasons for rejecting or discounting the opinions of other sources prevents the reviewing Court from evaluating whether the administrative decision is supported by substantial evidence, remand is justified. *Sears v. Colvin*, No. 1:11-cv-0096, 2015 WL 3606800, at *6 (M.D. Tenn. June 8, 2015).

Here, the ALJ gave controlling weight to the February 17, 2009 opinion of the treating physician, but only for purposes of the *post*-May 1, 2008 RFC. The ALJ supported this qualified

acceptance of Dr. O'Brien's opinion by noting that it was not rendered prior to May 1, 2008. AR 19. Defendant echoes this statement, noting that Dr. O'Brien's February 17, 2009 opinion was "written in the present tense" and "did not opine on [Plaintiff's] limitations during the period before May 1, 2008[.]" DE 13 at 11. This argument is without merit, however, as the ALJ incorporated the opinion of Dr. Johnson into the *pre*-May 1, 2008 RFC, even though this opinion was similarly not rendered prior to May 1, 2008. AR 359.[3] There is no indication that Dr. Johnson intended for her opinion to apply prior to May 1, 2008. On the contrary, Dr. Johnson's RFC assessment was actually intended to cover the period beginning on June 30, 2009, well after May 1, 2008. AR 351. The ALJ failed to explain why Dr. Johnson's opinion, but not Dr. O'Brien's, applied to the pre-May 1, 2008 RFC. The ALJ cannot refuse to apply Dr. O'Brien's RFC retroactively because it was not rendered prior to May 1, 2008, (DE 13 at 11), then proceed to incorporate a non-examining State physician's RFC retroactively into the pre-May 1, 2008 RFC. *See Karger v. Comm'r of Soc. Sec.*, 414 F. App'x 739, 749 (6th Cir. 2011) ("Inaccuracies, incomplete analysis, and unresolved conflicts of evidence can serve as a basis for remand."). Accordingly, the Court concludes that the ALJ's reasoning does not comply with the requirement of 20 C.F.R. § 404.1527 that good reasons be provided for the weight assigned to the treating physician's opinion, and therefore remands this case for further consideration.

**2. Whether the ALJ erred by failing to include a function-by-function assessment in the RFC assessment.**

Plaintiff contends that the ALJ's failure to include a function-by-function assessment in his pre-May 1, 2008 RFC constitutes material error. DE 12-1 at 12. Plaintiff again cites SSR 96-

---

[3] Dr. Johnson's opinion was issued on December 29, 2008, nearly eight months after May 1, 2008. AR 359.

8p as support, arguing that that Dr. O'Brien's medical opinion and the ALJ's decision are inconsistent and that the RFC does not resolve the alleged inconsistencies pertaining to postural limitations as required by SSR 96-8p. *Id*. Plaintiff also argues that that the ALJ erred by failing to include any "mental, non-exertional limitations" resulting from his alleged pain. *Id*. at 13.

With respect to the latter argument, counsel for Plaintiff explicitly stated during the hearing before the ALJ that there was no mental component to Plaintiff's condition, and that the claim was based solely on alleged physical impairments. AR 33. The argument is therefore without merit, as the ALJ is not required to "discuss those capacities for which no limitation is alleged." *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002) (internal citations omitted).

Nonetheless, Plaintiff notes that SSR 96-8p requires the ALJ to assess both the exertional and nonexertional capabilities of the claimant.[4] However, it does not require the ALJ to provide a written function-by-function assessment in the written opinion. *See Delgado*, 30 F. App'x at 547 ("Although a function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in writing.") (internal citation omitted). Regardless, because this matter will be remanded for further proceedings to include a new RFC, this assertion of error is rendered moot.

### 3. Whether the ALJ erred by not re-contacting Dr. O'Brien or another medical expert to testify regarding the onset date of the Plaintiff's disability.

Plaintiff alleges that the ALJ erred in failing to re-contact Dr. O'Brien or retain a medical expert to testify regarding the onset date of Plaintiff's disability. DE 12-1 at 13. Plaintiff cites SSR 96-5p as support for this argument, stating that "an ALJ must make 'every reasonable

---

[4] Exertional capacities include lifting, carrying, standing, walking, sitting, pushing, and pulling. Nonexertional capacities include manipulative, postural, visual, communicative, and mental functions. SSR 96-8p, 1996 WL 374184, at *5-6 (SSA July 2, 1996).

effort' to recontact treating sources for clarification of their opinion when the ALJ cannot ascertain the basis of the opinion from the record." *Id*. According to Plaintiff, a physician is required to make the finding as to when the Plaintiff was no longer able to perform full-time work, and none of the medical opinions of record opined as to the onset date of disability. *Id*. at 14. Plaintiff argues that this decision was a medical question that the ALJ could not make on his own. *Id*.

Notably, Plaintiff fails to reference SSR 83-20, the interpretation ruling that specifically involves the Commissioner's policy regarding the "relevant evidence to be considered when establishing the onset date of disability[.]" 1983 WL 31249, at *1. SSR 83-20 provides multiple factors that the ALJ must consider in determining a claimant's disability onset date, including the claimant's allegations, work history, and medical evidence. *Id*. at *2. The established onset date "must be fixed based on the facts and can never be inconsistent with the medical evidence of record." *Id*. at *3. SSR 83-20 furthers states the following with respect to obtaining a medical expert's opinion as to the disability onset date:

> In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At the hearing, the [ALJ] should call on the services of a medical advisor when onset must be inferred. If there is information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made.

*Id*.

Despite this mandate, the Court notes that it is the claimant's burden to provide a complete record, which is defined as evidence complete and detailed enough to enable the Commissioner to make a disability determination. *Landsaw v. Sec'y of Health & Human Servs.*,

803 F.2d 211, 214 (6th Cir. 1986) (internal citation omitted). Plaintiff points to no evidence, conflicting or otherwise, that would have required the ALJ to contact Dr. O'Brien to ascertain his opinion as to the onset date pursuant to SSR 96-5p. Similarly, despite claiming that the ALJ was required under SSR 96-6p to obtain an updated medical expert opinion, Plaintiff fails to identify anything in the record that would trigger this affirmative duty. Indeed, Plaintiff fails to cite any medical evidence of record at all.

Nevertheless, the Court finds that the evidence of record is sufficiently unclear with respect to the disability onset date that consultation with a medical expert was warranted in this case. SSR 83-20 states that the ALJ "should" contact a medical advisor when the onset date must be inferred. 1983 WL 31249, at *3. At least one other Circuit has determined that "should" means "must" with respect to SSR 83-20. *See Armstrong v. Comm'r of Soc. Sec. Admin.*, 160 F.3d 587, 590 (9th Cir. 1998) ("If the medical evidence is not definite concerning the onset date and medical inferences need to be made, SSR 83-20 *requires* the administrative law judge to call upon the services of a medical advisor and to obtain all evidence which is available to make the determination.") (emphasis added) (internal citation and quotations omitted). In light of the uncertainty as to the onset of Plaintiff's disabling condition, the Court similarly finds that the ALJ should have retained a medical expert to assist in the determination of the disability onset date.

Instead, the ALJ found that May 1, 2008 was a reasonable onset date based on his finding that Plaintiff's "sit/stand limitations" did not arise until July of 2008. AR 18. The ALJ acknowledged that Dr. O'Brien's office notes indicated that Plaintiff was experiencing increased neck and back pain "when shifting from sitting to standing" before 2008,[5] but noted that Plaintiff

---

[5] This admission by the ALJ contradicts his previous statement in the opinion that there was "no mention in any of Dr. O'Brien's treatment notes about any sit/stand problems." AR 18. As previously discussed,

was still able to work as a barber until May 14, 2008. AR 18. Thus, the sole basis for establishing May 1, 2008 as the onset date was Plaintiff's ability to work as a barber until May 14, 2008. AR 293. However, the ALJ conceded that there was no evidence indicating that Plaintiff's work as a barber constituted substantial gainful activity:

> There is no reported income from the claimant's work as a barber. He testified that this was cash-based employment. Therefore, the record does not include earnings records for this employment. The claimant denied that his earnings derived from this activity reached substantial gainful activity level earnings. While there are credibility issues with the claimant's testimony, the evidence of record is insufficient to find that his employment as a barber constitutes substantial gainful activity.

AR 14. This is important to a determination of a disability onset date, as the Act clearly defines disability as the "inability to engage in any *substantial gainful activity* by reason of any medically determinable physical or mental impairment …." 42 U.S.C. § 432(d)(1)(A) (emphasis added). SSR 83-20 defines the onset date of disability as "the first day an individual is disabled as defined in the Act and the regulations." 1983 WL 31249, at *1.

Here, the ALJ concluded that Plaintiff's work as a barber did not constitute substantial gainful activity, a conclusion that is supported by Plaintiff's admission that he did not have a license to operate as a barber, Plaintiff's statement that his work as a barber was "just something on the side," and the acknowledgement of Plaintiff's attorney that he could not locate any record of earnings involving Plaintiff's work as a barber. AR 35, 61-62.[6] Nevertheless, the ALJ effectively determined that this work did represent substantial gainful activity for purposes of

---

there is ample evidence that Plaintiff was experiencing difficulty with sitting and standing well before July of 2008. AR 297, 300-02, 304.

[6] The Court also notes that Dr. O'Brien's treatment records do not definitively establish that parameters of Plaintiff's work as a barber. Dr. O'Brien initially stated that Plaintiff "works as a barber" (AR 304), later stated that Plaintiff "runs a barber shop" (AR 296), then stated that Plaintiff was "working as a barber" (295), and finally stated during his last documented visit that Plaintiff "owns a barber shop." AR 291.

establishing the disability onset date, noting that despite documented increases in neck and back pain, Plaintiff was "still able to work as a barber." AR 18.

The Court finds that this was improper, as the onset date "should be set on the date when it is most reasonable to conclude from the evidence that the impairment was sufficiently severe to prevent the individual from engaging in [substantial gainful activity] (or gainful activity) for a continuous period of at least 12 months or result in death." SSR 83-20, 1983 WL 31249, at *3.[7] Plaintiff testified that he did not work for a specified amount of time and did not cut hair on a daily basis, but instead "cut hair here and there," and made approximately $50.00 per week. AR 36-38. He thus made approximately $200 per month, which is well below the regulatory amount that creates a presumption of substantial gainful activity. *See* 20 C.F.R. § 404.1574(b)(2)(ii)(B). *See also Miracle v. Celebrezze*, 351 F.2d 361, 379 (6th Cir. 1965) ("Intermittent, sporadic or infrequent activity does not constitute ability to 'engage in substantial, gainful activity' precluding establishment of disability under Social Security Act.") (internal citation omitted). Therefore, notwithstanding the ALJ's determination that Plaintiff's testimony was not credible, the Court finds that the Plaintiff's undefined work as a barber through May of 2008 did not represent substantial evidence sufficient to establish May 1, 2008 as a disability onset date. *See Blankenship*, 874 F.2d at 1124 (holding that the Commissioner must support any

---

[7] The Court admits confusion regarding the parenthetical phrase "or gainful activity" in SSR 83-20, and is unable to locate any case law that explains the amount of work necessary to constitute "gainful activity" for purposes of establishing a disability onset date. However, in light of the ambiguity regarding Plaintiff's work as a barber, as discussed above, the Court finds that there is insufficient evidence to conclude that this work represented "gainful activity" for purposes of establishing the disability onset date. The Court also finds that the vague nature of the phrase "gainful activity" in this context further supports its conclusion that the ALJ should have relied on the services of a medical expert in establishing the disability onset date.

determination of a disability onset date with substantial evidence) (citing *Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988)).

The Court emphasizes that it does not find fault with the ALJ's credibility determination, as discussed below, nor does it find that the ALJ improperly considered Plaintiff's work as a barber. *See Ashworth v. Sullivan*, 951 F.2d 348 (table), 1991 WL 278961, at *7 (6th Cir. 1991) (finding that the ALJ properly considered the claimant's part-time work, even though it did not qualify as "substantial gainful activity"). Indeed, work that is not performed on a full-time basis may still be considered "substantial gainful activity" for purposes of determining disability. *See* 20 C.F.R. § 404.1572(a) ("Your work may be substantial gainful activity even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before."). *See also Hammond v. Chater,* 116 F.3d 1480 (table), 1997 WL 338719, at * 2 (6th Cir. June 18, 1997) ("[T]he regulations define 'substantial gainful activity' as including part-time work."). However, the Court concludes that the ALJ improperly relied on Dr. O'Brien's medical note documenting Plaintiff's ability to work as a barber through May of 2008 as a basis for establishing a disability onset date, in light of the ALJ's own determination that such work did not constitute substantial gainful activity. In his opinion, the ALJ implicitly considered Plaintiff's work as a barber substantial gainful activity by discounting the severity of Plaintiff's documented complaints of pain and problems with sitting and standing based on his work as a barber, yet explicitly found that such work was not substantial gainful activity. The Court therefore does not agree with the ALJ's conclusion that May 1, 2008, the approximate date on which Plaintiff stated he could no longer work as a barber, represents a reasonable calculation of Plaintiff's disability onset date.

Because of this determination, the Court finds that on remand, the ALJ must apply SSR 83-20 in establishing Plaintiff's disability onset date. *See Blankenship*, 874 F.2d at 1124 (reversing decision of Commissioner and remanding in part to "call on the services of a medical advisor in determining the disability onset date"). The Court notes that where the medical evidence regarding the onset date of the disability is ambiguous and the ALJ must infer the onset date, as is the case here, "SSR 83-20 and the substantial evidence rule dictate ... that an ALJ in a situation of this kind must call upon the services of a medical advisor rather than rely on his own lay analysis of the evidence." *Walton v. Halter,* 243 F.3d 703, 709 (3d Cir. 2001). As noted by the Third Circuit in *Walton*, this conclusion is consistent with the holdings of the Courts of Appeals in other circuits. *See Grebenick v. Chater,* 121 F.3d 1193, 1201 (8th Cir. 1997) ("[i]f the medical evidence is ambiguous and a retroactive inference is necessary, SSR 83-20 requires the ALJ to call upon the services of a medical advisor to insure that the determination of onset is based upon a 'legitimate medical basis'"); *Bailey v. Chater*, 68 F.3d 75, 79 (4th Cir. 1995) (requiring enlistment of a medical expert when disability onset is ambiguous despite SSR 83-20's ostensibly permissive language); *Spellman v. Shalala*, 1 F.3d 357, 362 (5th Cir.) (1993) ("We therefore hold that in cases involving slowly progressive impairments, when the medical evidence regarding the onset date of a disability is ambiguous and the [Commissioner] must infer the onset date, SSR 83-20 requires that that inference be based on an informed judgment. The [Commissioner] cannot make such an inference without the assistance of a medical advisor."); *DeLorme v. Sullivan,* 924 F.2d 841, 848 (9th Cir.1991) ("In the event that the medical evidence is not definite concerning the onset date and medical inferences need to be made, SSR 83-20 requires the administrative law judge to call upon the services of a medical advisor and to obtain all evidence which is available to make the determination.").

**4. Whether the ALJ properly evaluated the credibility of Plaintiff's statements.**

Plaintiff finally argues that the ALJ improperly evaluated his credibility in violation of SSR 96-7p.[8] According to Plaintiff, the ALJ failed to support with substantial evidence his conclusion that Plaintiff's work as a part-time barber prior to May 1, 2008 demonstrated no particular limitation with regard to standing, sitting, or walking. *Id*. at 16-17. However, the Court declines to assess the merit of Plaintiff's assertion of error in light of its ruling that this case be remanded for further consideration based on the foregoing analysis.

## V. CONCLUSION

For the above stated reasons, Plaintiff's motion for judgment on the administrative record (DE 12) is GRANTED. The Court hereby REVERSES the decision of the Commissioner and REMANDS this case for further proceedings consistent with this ruling

An appropriate Order will accompany this memorandum.

_____
BARBARA D. HOLMES
United States Magistrate Judge

---

[8] SSR 96-7p has been superseded by SSR 16-3p, which became effective on March 28, 2016. However, because Plaintiff's complaint was filed in May of 2012, SSR 96-7p applies to this claim.